IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| MICHAEL KAMINSKI, # 257960, | ) | Civil Action No. 3:10-478-RBH-JRM |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| SCDC DIRECTOR JON OZMINT; | ) | **ORDER** |
| DIRECTOR OF MEDICAL HEADQUARTERS | ) | |
| SCDC, UNKNOWN; | ) | **AND** |
| DR. BYRNES AT ALLENDALE | ) | |
| CORRECTIONAL INSTITUTION, A/K/A | ) | **REPORT AND RECOMMENDATION** |
| DR. THOMAS BYRNES; AND | ) | |
| DR. MCCREE AT MCCORMICK | ) | |
| CORRECTIONAL INSTITUTION, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff filed this action, pro se, on March 5, 2010.[1]  At the time of the alleged incidents, he

was an inmate at the Allendale Correctional Institution ("ACI") and the McCormick Correctional

Institution ("MCCI") of the South Carolina Department of Corrections ("SCDC"). He is currently

incarcerated at MCCI.  Defendants, all employees of SCDC, are SCDC Director Jon Ozmint

("Ozmint"), the (unknown) Director of Medical Headquarters at SCDC, Dr. Thomas Byrne

("Byrne"),[2] and Dr. John McRee ("McRee").[3]  Defendants filed a motion for summary judgment on

August 10, 2010.  Plaintiff, because he is proceeding pro se, was advised on August 11, 2010,

pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d) and (e), DSC. Because these are dispositive motions, the report and recommendation is entered for review by the court.

[2]The correct spelling of this Defendant's last name is Byrne, not Byrnes.  See Byrne Aff.

[3]The correct spelling of this Defendant's last name is McRee, not McCree.  See McRee Aff.



Defendants' motion could result in the dismissal of his complaint. Plaintiff filed a response on September 8, 2010, and Defendants filed a reply on September 14, 2010. On October 5, 2010, Plaintiff filed a motion for summary judgment. Defendants filed a response on October 7, 2010.

## **MOTION TO AMEND**

Plaintiff filed a motion to amend on September 8, 2010. Plaintiff appears to be asking to add SCDC and Dr. Thomas Moore ("Moore") as defendants. Defendants contend that Plaintiff's motion should be denied because Plaintiff did not file his motion to amend until after they filed a motion for summary judgment such that they should not be required at this late date to expend additional time and resources to respond to additional allegations from Plaintiff. They also argue that Plaintiff's motion should be denied because Plaintiff fails to state a claim against the new proposed defendants. Plaintiff filed a response on October 5, 2010.

Pursuant to Fed. R. Civ. P. 15, a party may amend his pleading once at any time before a responsive pleading has been filed. After the opposing party has answered (Defendants filed an answer on May 5, 2010), however, a plaintiff must seek leave of the court to amend. Although Rule 15(a) mandates that leave to amend pleadings should be granted freely where justice requires, "[m]otions to amend are committed to the discretion of the trial court." Keller v. Prince George's County, 923 F.2d 30, 33 (4th Cir. 1991). Delay alone is not sufficient reason to deny leave to amend, but must be accompanied by prejudice, bad faith, or futility. See Foman v. Davis, 371 U.S. 178 (1962); Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986); Albrecht v. Lund, 845 F.2d 193, 195 (9th Cir.), modified, 856 F.2d 111 (9th Cir. 1988)("if a complaint is dismissed for failure to state a claim upon which relief can be granted, leave to amend may be denied, even if prior to a responsive pleading, if amendment would be futile").



Although Plaintiff discusses some of his proposed claims, he has not submitted a proposed amended complaint, making it impossible to determine what claims he asserts against his proposed defendants.  Additionally, Plaintiff has unduly delayed his motion and allowing him to amend or supplement at this time would be prejudicial to Defendants.  See Deasy v. Hill, 833 F.2d 38, 40 (4th Cir. 1987)(amended complaint), cert. denied, 485 U.S. 977 (1988); Walker v. United Parcel Serv., 240 F.3d 1268, 1278-1279 (supplemental claim).   Plaintiff appears to argue that amendment was delayed because he just discovered Moore's identity as medical director.  Defendants, however, served Plaintiff with interrogatory responses on July 6, 2010.  In these responses, Defendants identified Dr. Thomas Moore as SCDC's medical director.  See Attachments to Plaintiff's Opp. Mem. (Doc. 23).  Plaintiff's motion to amend was filed well after discovery ended and a motion for summary judgment was filed by Defendants.

Further, Plaintiff's motion to amend would be futile.  SCDC is an agency of the State of South Carolina and is entitled to Eleventh Amendment immunity.  See Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).  Plaintiff fails to state specifically what he claims Moore has done to violate his constitutional rights.  Plaintiff appears to allege that Dr. Moore is liable in a supervisory capacity.  The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action.  See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982).[4]

---

[4]As discussed below, Plaintiff fails to show deliberate indifference to his medical needs. Additionally, even if SCDC is added, Plaintiff appears to only assert state law claims against SCDC. As discussed below, it is recommended that any state law claims be dismissed.



## MOTIONS FOR SUMMARY JUDGMENT

Plaintiff asserts claims concerning his medical care. He appears to allege, pursuant to 42 U.S.C. § 1983 ("§ 1983"), that his constitutional rights were violated because Defendants were deliberately indifferent to his serious medical needs. He also appears to allege claims under South Carolina law for negligence, gross negligence, medical malpractice, and breach of duty. Defendants contend that they are entitled to summary judgment because: (1) Plaintiff fails to make any specific allegations as to how Defendant Ozmint violated his constitutional rights; (2) Plaintiff fails to state a cause of action under § 1983; (3) Defendants are entitled to qualified immunity; (4) Defendants, in their official capacities, they are not "persons" under § 1983; (5) Defendants are entitled to Eleventh Amendment immunity; (6) Defendant Ozmint cannot be held liable in any supervisory capacity for any acts of others over which he had no control; (7) Plaintiff's complaint lacks an arguable basis in law and should be dismissed as frivolous under 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1); (8) the individual Defendants are not proper parties under the South Carolina Tort Claims Act ("SCTCA"), § 17-78-10, et seq.; (9) any action pursuant to state law should be dismissed on the basis of the SCTCA; and (10) Plaintiff fails to show that Defendants were deliberately indifferent to Plaintiff's serious medical needs. Plaintiff filed an untimely motion for summary judgment in which he argues that there are genuine issues of fact for trial.[5]

1.  Standard for Summary Judgment

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S.

---

[5]The deadline to file dispositive motions was extended to August 10, 2010. See Doc. 16. Plaintiff did not file his motion until October 5, 2010.

4



319 (1972) and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, <u>Weller v. Department of Social Services</u>, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.

Summary judgment is appropriate when there is no genuine dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). The non-moving party is entitled to have the court construe all disputed facts and all reasonable inferences drawn therefrom in the most favorable light. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex Corp. v Catrett</u>, 477 U.S. 317, 322 (1986). A party wishing to oppose summary judgment must present evidence tending to raise a material and genuine factual dispute. <u>See</u> <u>Morrissey v. William Morrow & Co.</u>, 739 F.2d 962 (4th Cir. 1984), <u>cert.</u> <u>denied</u> 469 U.S. 1216 (1985); <u>Foy v. Norfolk and W. Ry. Co.</u>, 377 F.2d 243 (4th Cir.), <u>cert.</u> <u>denied</u>, 389 U.S. 848 (1967); <u>Bradford v. School Dist.</u>, 364 F.2d 185 (4th Cir. 1966); and <u>Sturdivant v. Medical Eng'g Corp.</u>, 121 F.R.D. 51 (D.Md. 1988).

2.    <u>Medical Claims</u>

Plaintiff alleges that he has suffered for many years from pain in his side, vomiting, and blood in his stools. He claims that Defendants were deliberately indifferent to his serious medical needs because they have not provided adequate medical treatment for these medical



conditions. Specifically, he claims that Defendants failed to provide him with recommended surgery to remove his gallbladder and failed to provide a colonoscopy.

In the case of <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," <u>Id.</u>, quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> \* \* \* \* \* \* \*
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," <u>Gregg v. Georgia</u>, <u>supra</u>, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

<u>Estelle</u>, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

<u>Estelle</u>, 429 U.S. at 107.



The Court of Appeals for the Fourth Circuit also considered this issue in the case of <u>Miltier v. Beorn</u>, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." <u>Id.</u> at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

<u>Id</u>. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. <u>Estelle</u>, <u>supra</u>; <u>Farmer v. Brennan</u>, <u>supra</u>; <u>Sosebee v. Murphy</u>, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. Defendants have submitted Plaintiff's extensive treatment records from SCDC medical, copies of test results and treatment at outside facilities during the relevant time period, and



affidavits from Defendants Byrne and McRee. These medical records reveal that Plaintiff was provided with treatment from medical personnel at SCDC on numerous occasions, prescribed medications for his ailments, provided with a CT scan of his abdomen and an ultrasound of his gallbladder at an outside facility, and provided surgical consultation at SCDC.

Dr. Byrne is a licensed general practitioner who has practiced medicine for thirteen years. He opines that Plaintiff was provided appropriate medical care at ACI. Dr. Byrne states that Plaintiff's records indicate that Plaintiff had complaints of abdominal pain for years, Plaintiff was seen by a surgeon for evaluation, and Plaintiff's scans showed evidence of gallbladder sludge, but no evidence of gallstones.

Dr. Byrne states that he saw Plaintiff on July 14, 2009, at which time Plaintiff made no complaints of abdominal pain. He received a telephone call from security personnel on July 17, 2009, at which time Plaintiff complained of right-sided abdominal pain with no vomiting. He determined that it was not a new complaint and that Plaintiff could be seen at SCDC sick call. On September 16, 2009, after being informed that Plaintiff complained of abdominal pain and vomiting, Dr. Byrne instructed the nurse to give Plaintiff Phenergan and clear liquids. On September 17, 2009, Dr. Byrne saw Plaintiff, noted that Plaintiff had been to the emergency room twice with the complained condition since he had been in SCDC, and provided Plaintiff with Phenergan and Percogesic. He reexamined Plaintiff on September 18, 2009. Based on this and Plaintiff's medical records, Dr. Byrne did not feel that additional treatment was necessary, but prescribed additional Percogesic for pain. He ordered that lab work be done, the results of which were normal. Dr. Byrne next saw Plaintiff on October 6, 2009 for complaints of right-sided abdominal pain. Based on Plaintiff's recent normal lab results, Plaintiff's ultrasound and CT scan results, and a surgical



consultation in May 2009, Dr. Byrne did not believe that any additional treatment was needed at that time.

On October 20, 2009, Dr. Byrne recommended that Plaintiff be sent to the surgery clinic. Plaintiff was seen by medical personnel on October 28, 2009, after Plaintiff complained of abdominal pain the night before. Plaintiff was found to be in no apparent distress. On October 30, 2009, Plaintiff complained of abdominal pain, and Dr. Byrne prescribed Phenergan. On November 27, 2009, Plaintiff complained of right-sided pain. There was a slight redness to the right side of his abdomen. Dr. Byrne determined that this was not an emergency situation because Plaintiff was not complaining of vomiting, his vital signs were normal which was inconsistent with complaints of pain, and gallbladder problems would not cause swelling or redness of the abdomen Dr. Byrne states that he saw Plaintiff on December 4, 2009, at which time Plaintiff complained of abdominal pain and stated that it was worse with greasy food. Dr. Byrne instructed Plaintiff to avoid greasy food and scheduled him for a surgical consultation.

Dr. Byrne states that Plaintiff was seen at the surgery clinic where it was noted that Plaintiff had abdominal pain of uncertain etiology, Plaintiff could be seen by a gastroenterologist and possibly have a colonoscopy, and Plaintiff was to follow up with the surgery clinic on an as needed basis. He saw Plaintiff on January 13, 2010, and informed Plaintiff that he would schedule Plaintiff for a barium enema. Dr. Byrne stated that he felt it was appropriate to schedule this test before Plaintiff was sent to any additional outside appointments. Plaintiff was not seen by Dr. Byrne after that time because Plaintiff was transferred to MCCI on January 14, 2010. Dr. Byrne states that based on his review of Plaintiff's medical records, surgery has never been recommended and in his opinion surgery is not necessary or proper. Byrne Aff.



Dr. McRee is a licensed general practitioner who has been practicing medicine for 33 years. He states that based on his review of Plaintiff's medical records, he determined that surgery has never been recommended for Plaintiff and in his opinion surgery is not necessary or proper. Plaintiff was seen at MCCI sick call on January 22, 2010, at which time he was provided with medication for rhinorrhea. Plaintiff complained of right-sided pain at sick call on February 19, 2010. Dr. McRee states that based on his review of Plaintiff's medical records, including the ultrasound of Plaintiff's gallbladder which showed no stones or wall thickening and Plaintiff visit to the surgery clinic where no pathology was found, surgery was not recommended. He states that Plaintiff did not make additional complaints of abdominal pain until June 15, 2010, at which time it was noted that Plaintiff was in no apparent distress. Plaintiff was given Ibuprofen and instructed to request medical assistance if needed. McRee Aff.

Plaintiff alleges that he was scheduled for surgery by Dr. Moses. Review of Plaintiff's medical records, however, fails to show this. Dr. Moses wrote that Plaintiff's GI evaluation and CT scans should be consulted.

Plaintiff alleges that he was scheduled for a colonoscopy by Dr. Byrne, but he did not ever receive this procedure. There is no evidence, however, that Dr. Byrne ever scheduled a colonoscopy. On the date in question, it is written in the medical records that "discussed surgery clinic - will subm[i]t for barium enema."[6] Dr. Byrne states that on January 13, 2010 he informed Plaintiff that he would schedule a barium enema. He states that the barium enema is less invasive than a

---

[6]A colonoscopy is an examination by means of an "elongated flexible endoscope which permits visual examination of the entire colon." Dorland's Illustrated Medical Dictionary 392 (30th ed. 2003) at 392. A barium enema involves "a suspension of barium injected into the intestine as a contrast agent for radiological examination." Id. at 617.



colonoscopy and if there are positive findings from it, a colonoscopy could be completed. Byrne Aff., Para. 26.

Plaintiff also claims that gallbladder surgery was ordered at his December 31, 2009 surgical consultation. He alleges that Defendants were deliberately indifferent in not providing him with such surgery. Plaintiff was referred to the SCDC Surgery Clinic in December 2009. A Dr. Brings examined Plaintiff on December 31, 2009. Records from that visit indicate that Plaintiff was diagnosed with "abdominal pain uncertain etiology; not typical biliary [pertaining to the bile, bile ducts, or gallbladder] colic - suspect somatization."[7] In his plan of treatment, Dr. Brings wrote "GI consult/colonoscopy [,] treat for irritable bowel?" After this, however, is written "not at this time." Additionally, Dr. Brings wrote F/U [follow up] KCI surgery prn only."[8] As noted above, both Dr. Byrne and Dr. McRee also opined that surgery was not necessary. Dr. McRee and Dr. Byrne states that "[g]allbladder sludge generally does not cause any symptoms and no treatment is necessary. Gallbladder sludge often will simply dissipate over time on its own, but can lead to gallstones. However, as referenced above [,] CT scans specifically show that Plaintiff had no gallstones and no gallbladder wall thickening." McRee Aff., Para. 11; Byrne Aff., Para. 15.

Plaintiff alleges that Defendants failed to provide him with the specific type of medical care (in particular, gallbladder removal and a colonoscopy) that he believes he should have been provided. To the extent that Plaintiff disagrees with his medical care, he fails to show that his constitutional rights were violated. "Although the Constitution does require that prisoners be provided with a

---

[7]Somatization is the "conversion of mental experiences or states into bodily symptoms." Id.at 1721.

[8]P.R.N. is the abbreviation for the Latin phrase pro re nata which means "according to the circumstances." Id. at 1506 and 1520.

11



certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." <u>Jackson v. Fair</u>, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. <u>See</u> <u>Brown v. Thompson</u>, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. <u>See</u> <u>Smart v. Villar</u>, 547 F.2d 112 (10th Cir. 1976); <u>Lamb v. Maschner</u>, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff believes he should have received different medical treatment, his allegations do not rise to the level of a constitutional violation.

    3.    <u>Supervisory Liability</u>

Defendant Ozmint contends that he cannot be held liable in any supervisory capacity for any acts of others over which he had no control. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. <u>See</u> <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978); <u>Fisher v. Washington Metro Area Transit Authority</u>, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. <u>Slakan v. Porter</u>, 737 F.2d 368 (4th Cir. 1984), <u>cert.</u> <u>denied</u>, <u>Reed v. Slakan</u>, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendant Ozmint was personally responsible for any of the incidents or acted in any way other than a supervisory role. Ozmint states that he has not had any involvement with and has no first-hand knowledge of the incidents complained of by Plaintiff and



has no direct involvement in the medical care and treatment of inmates. Ozmint Aff., Paras. 4-5. Further, Plaintiff has not shown that Ozmint was deliberately indifferent to, or tacitly authorized, any of the alleged actions or inactions. Thus, Plaintiff fails to show that Defendant Ozmint is liable on a theory of respondeat superior or supervisory liability.

4. <u>Immunity</u>

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

<u>Id.</u> at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. <u>Id.</u> at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against

13



the state.  State officials may only be sued in their individual capacities.  Thus, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity.  The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged."  Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent."  As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995).   As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights.   Therefore, Defendants are entitled to qualified immunity in their individual capacities.

5.     State Law Claims

Defendants contend that Plaintiff's state law claims should be dismissed because Plaintiff cannot maintain an action under the SCTCA against any of the Defendants as the agency



or subdivision of which the employee was acting must be substituted as a party defendant; Plaintiff fails to assert any facts that would imply gross negligence on the part of Defendants; and Plaintiff has not provided the necessary expert testimony for a malpractice claim.

As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), only his state law claims would remain. Thus it is also recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any remaining state law claims be dismissed without prejudice.

## CONCLUSION

**IT IS ORDERED** that Plaintiff's motion to amend his complaint (Doc. 22) is **denied**. It is recommended that Defendants' motion for summary judgment (Doc. 18) as to Plaintiff's federal claims be **granted,** and that Plaintiff's state law claims be **dismissed without prejudice**. It is also recommended that Plaintiff's motion for summary judgment (Doc. 29) be **denied**.

Joseph R. McCrorey
United States Magistrate Judge

October 21, 2010
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).